This is a consolidated appeal by NYTCO Services, Inc. (NYTCO) and J.E. McDonald from judgments rendered by a jury in favor of eighty-two plaintiffs joined under Rule 20, ARCP. *Page 877 
In 1972 N.Y.TCO, formerly New York Terminal Warehouse Company, Inc., entered into a field warehousing lease agreement with Covington Grain Company, Inc. (Covington Grain) in Andalusia, Alabama under which NYTCO leased a bagged goods warehouse and five outside storage bins (silos). The bagged goods warehouse, a portion of which was used as Covington Grain's office, had a storage capacity of 15,000 bushels of grain and the five storage bins had a capacity of 110,000 bushels. These represented all of Covington Grain's storage facilities at this location.
The plaintiffs were farmers in Covington and surrounding counties, and during the 1974 soybean harvesting season they delivered soybeans to Covington Grain under three different kinds of agreements. Some farmers delivered soybeans according to previously made contracts for sale at a specified price, some delivered soybeans for sale at the market price and some delivered soybeans for a price to be agreed upon later. This third type of agreement is the subject of this action. The record discloses that under this third type of agreement the customer, after delivering his soybeans to Covington Grain, could purchase an equivalent quantity of soybeans with a five cents per bushel handling charge plus a one and a half cent per bushel per month storage charge. The receipts most farmers received for their deliveries were various Covington Grain weight tickets; however, some received Covington Grain statement sheets. The weight tickets had the words "Bought of" printed on them together with the name of the farmer and some had the word "Hold" written on them. A number of the statement sheets had the words "Store," "Stored," or "On Storage" written on them together with the name of the farmer.
Most of the soybean agreements were made with Morris Rabren but some were made with Mary Wishum, who was employed by Covington Grain as a bookkeeper for whom she did general office work. She was also employed by NYTCO to prepare certain reports which were sent from the Covington Grain facility to NYTCO's Atlanta office. NYTCO required her to prepare a receiving report and a daily report of the grain held for the purpose of issuing warehouse receipts. These reports together with a warehouse receipt application would be the basis for the issuance of warehouse receipts by NYTCO. Although Ms. Wishum's written instructions required that she prepare and send a daily report each day, she prepared one only when goods were actually stored under warehouse receipts in accordance with her oral instructions from NYTCO supervisor, Mr. Obie Jones. According to Ms. Wishum's testimony, she did not make up any daily reports for a period of time during the 1974 crop growing season. Ms. Wishum's salary was determined and paid by Covington Grain but her check was issued and deductions were made by NYTCO.
When NYTCO leased the Covington Grain facilities, it required that J.E. McDonald, the third party defendant, and Morris Rabren, execute a personal indemnity agreement for certain losses. J.E. McDonald was a stockholder, a member of the Board of Directors and the Secretary-Treasurer of Covington Grain. In addition to attending stockholders' meetings regularly and visiting the facility once a week, he dealt with Covington Grain as a customer in 1974. Morris Rabren, who was also a stockholder, was the President and General Manager of Covington Grain during the 1974 crop-growing season.
On October 21, 1974 following an application to the State of Alabama Department of Agriculture and Industries, NYTCO received a Public Warehousemen's Permit for its facility at Covington Grain. In addition, NYTCO had placed about twelve signs at various places on the premises which stated: *Page 878 
 PUBLIC NOTICE THIS IS A PUBLIC WAREHOUSE PROPERTY IN THIS WAREHOUSE IS COVERED BY WAREHOUSE RECEIPTS ISSUED IN ACCORDANCE WITH THE LAWS OF THIS STATE. NEW YORK TERMINAL WAREHOUSE CO. INC. PUBLIC WAREHOUSEMEN
NEW YORK CHICAGO ATLANTA DALLAS MEMPHIS LOS ANGELES
Some of these signs were placed on the storage bins, one was placed on the bagged goods warehouse in which the business office was located, and NYTCO's Warehousemen's Permit was displayed on a bulletin board on the outside of Covington Grain's business office. The record shows that Mr. Obie Jones, a general supervisor of NYTCO, testified that the purpose of these signs about the premises was to protect the lender, such as the Commercial Bank of Andalusia.
The record also discloses that Covington Grain never had a Warehousemen's Permit. However, Covington Grain's domestic corporation franchise tax return for 1974 stated that it was in the business of "Grain-Storage, Sales Service." Mary Wishum testified that she told some of the plaintiffs that they could store their beans at the facility. According to the record, Mary Wishum also stated that she never knew what was in the bins and that she always accepted Morris Rabren's word as to what was in the storage bins.
Morris Rabren, President of Covington Grain, testified that he had been "hedging" on board of trade contracts (i.e. dealing in the soybean futures market) and that most of the plaintiffs knew this. Although the record is not clear on this point, it appears that Rabren would sell soybeans which had been left on storage. When the market declined in 1974-75, apparently Rabren sustained losses through his hedging.
Franklin Tillman, a field representative of NYTCO, was responsible for inspecting the facility at Covington Grain which he did about once a month. Another NYTCO representative, Howell Cone, also visited the facilities periodically and prepared written auditor's reports of these visits. These reports indicate that Howell Cone visited the facility on June 25, 1974, October 1, 1974 and on January 15, 1975. On January 21, 1975 the storage bins were padlocked by NYTCO representative Franklin Tillman. The record shows that on this date there were 19,964 bushels of soybeans actually present in the bins but the Commercial Bank of Andalusia held warehouse receipts for 27,000 bushels. In addition, the plaintiffs allege that at this time they had receipts for 161,000 bushels of soybeans at the facility. On January 31, 1975 Covington Grain filed a bankruptcy petition and thereafter notice was given by the United States District Court of those proceedings. The plaintiffs have filed claims in the bankruptcy proceedings but they have not recovered either money or beans.
The plaintiffs then brought this action against NYTCO, Rabren and Ms. Wishum alleging breach of contract, conversion, fraud, negligence and wantonness for the losses of their soybean deliveries. NYTCO then filed a third-party complaint against J.E. McDonald, and a cross-claim against Rabren, on the indemnity agreement they both made. The case was removed to Federal District Court by a defendant but because that Court lacked jurisdiction it remanded the case back to the Circuit Court of Covington County. Prior to trial the defendants filed motions for change of venue but they were denied. The trial commenced on August 2, 1976 and the jury rendered verdicts for the plaintiffs for $1,184,509.71 which were reduced to $1,169,509.71 by an amended judgment because of an error. The jury also found McDonald liable for the total verdicts on the *Page 879 
third-party complaint, and Morris Rabren liable for the total verdicts on NYTCO's cross-claim. NYTCO and J.E. McDonald have made a consolidated appeal.
The appellants argue that the trial court made numerous errors in denying their motions for directed verdict, motion for judgment N.O.V. and motion for new trial; however, these can be reduced to three basic contentions:
1) That the transactions in question were sales rather than bailments,
2) That Rabren and Ms. Wishum did not accept plaintiffs' soybeans for NYTCO under agency rules, and
3) That the trial court abused its discretion in denying defendants' motions for change of venue.
The first question presented is whether the transactions were sales or bailments because if they were sales, with passage of title, then there could be no recovery against NYTCO under the theories of negligence, conversion, fraud, and wantonness as alleged. The appellants argue that the transactions were present sales with a price to be fixed in the future underAla. Code tit. 7A §§ 2-106 (1), 2-204 (3), and 2-305. The references cited by appellants in Ala. Code, tit. 7A apply to those transactions in which the parties agree to a present sale with the price to be fixed in the future; however, those sections do not contemplate the plaintiffs' right at their discretion to require a return of the same or equivalent fungible goods as we have here, and thus this renders those sections inapplicable to this controversy. Further, the fact that the Covington Grain weight tickets and statements had words representing that plaintiffs' soybeans were being stored refutes the argument that the transactions were sales.
In addition, the record discloses that the option to require a return of goods or to sell the soybeans at the market price belonged to the plaintiffs. Under the authority contained in decisions from the courts of several midwestern grain producing states, if the option is retained by the depositor the transaction will be construed as one of bailment. Arndt v.Crowell, 138 Okla. 251, 280 P. 815 (1929); Latta v. TransitGrain Co., 222 S.W.2d 467 (Tex.Civ.App. 1949). In Burke v.Boulder Milling Elevator Co., 77 Colo. 230, 235 P. 574
(1925), a leading and well reasoned grain case the Colorado Supreme Court commented:
 The understanding was that there was to be no sale until such time as plaintiff demanded a price satisfactory to the mill. If that condition did not arise (and plaintiff had it in his power to see that it did not) the mill was obliged to return the wheat. `If the owner of goods deliver them to another with the understanding that there is to be no sale until the happening of a certain condition, this is a bailment, and the title does not pass until and unless the condition happens.' Furst v. Commercial Bank, 117 Ga. 472, 475, 43 S.W. [sic] 728. . . .
 He might so fix the price as to compel return of the wheat; hence his right, under the admitted facts, to force the return of the grain was absolute, and under all the authorities this was no sale but a bailment.
Therefore, the trial court was not in error in denying defendants' motion for directed verdict since there was at least a scintilla of evidence that there was a bailment as to Covington Grain.
The appellants also contend that the trial court erred in denying their motions for directed verdict, motion for judgment N.O.V. and motion for new trial because Morris Rabren was not an agent of NYTCO and Ms. Wishum did not have authority to accept plaintiff's beans on behalf of NYTCO. There is no evidence in the record which will furnish an inference that Morris Rabren had any express authority to act on behalf of NYTCO.
On the other hand, Mary Wishum was clearly under the control of NYTCO when she prepared receiving reports and daily reports of the grain held for the purpose of issuing warehouse receipts and in general when she transacted business for NYTCO according to her instructions. However, *Page 880 
the appellants argue that Ms. Wishum had only limited authority and that she did not have express or implied authority to accept plaintiffs soybeans (those in controversy) on behalf of NYTCO. The record reveals that Ms. Wishum's written instructions were as follows:
 1. You are to assist the Storekeeper in charge of the warehouse. You are, as required, to receive and hold on behalf of this company, as Public Warehousemen, all property that is stored in the warehouse. Such storage must be in accordance with the laws of the State, the requirements of the Uniform Warehouse Receipts Act, and the Rules and Regulations of this company, without exception.
 2. You are to cooperate with the Storekeeper in the operation of the warehouse to insure that the property stored is at all times under our exclusive dominion and control.
 3. You are to observe all the rules and regulations of this company and all special instructions issued by this company concerning the operation of the warehouse.
 4. You are to certify that all reports required by this company are accurate and correct by signing all such reports.
 5. You are to forward Daily Reports at the close of each and every business day whether or not goods have been received in or delivered from the warehouse.
 6. You are to have knowledge of all property stored in the warehouse and you are to certify to the truth and accuracy of the quantity and description of the property reported received by signing the Receiving Records.
 7. You are not to permit anything to be removed from the warehouse unless you have written permission of this company or have special instructions from this company governing the delivery of property held in the warehouse.
The Court of Appeals in Ridgeway v. Sullivan-Long Hagerty,Inc., 39 Ala. App. 341, 98 So.2d 665 (1957), made these comments in determining if agency exists:
 Numerous tests have been set forth in the cases as an aid in determining the ultimate fact of agency. The tests furnish assistance, but no definite answer since proposed in relation to the facts of a particular case.
`Control' is a factor often mentioned. . . .
. . . . .
 Another question sometimes in effect propounded is, does the special employer have the right to exercise control regardless of whether he does so. . . .
. . . . .
 And in Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, 327, the following observation is made:
 `In cases of this nature, consideration must be given to the character of the service to be rendered, the duration of employment, and the one who is paying the employee. . . . The true criterion is the exercise of power to control the employee at the time of the commission of the act. . . .' (emphasis added).
 It is the reserved right of control rather than its actual exercise that furnishes the true test of relationship. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608. (emphasis added). (39 Ala. App. at 344, 98 So.2d at 667-668)
Although there is evidence that Ms. Wishum had express authority to act for NYTCO pursuant to her written instructions, there is no evidence in the record that will furnish an inference that she had express authority to acceptplaintiffs' soybeans on behalf of NYTCO.
Whether or not Ms. Wishum possessed implied authority depends upon whether she possessed authority to do that which was proper, usual and necessary to the exercise of any authority expressly granted to her. W.B. Davis Hosiery Mill, Inc. v. WordLumber Co., 49 Ala. App. 492, 273 So.2d 469 (1972). Because Ms. Wishum did not have any express authority to accept plaintiffs' soybeans on behalf of NYTCO, she could not have had such implied authority within the line and scope of her employment. *Page 881 
Here, there is no dispute that NYTCO placed twelve signs about the premises at the Covington Grain facility. The appellants, however, contend that these facts made neither Rabren nor Ms. Wishum an agent by estoppel as argued by plaintiffs. They cite us to Johnson v. Shenandoah LifeInsurance Co., 291 Ala. 389, 281 So.2d 636 (1973); Standard OilCo. v. Gentry, 241 Ala. 62, 1 So.2d 29 (1941); and Union OilCo. v. Crane, 288 Ala. 173, 258 So.2d 882 (1972). In Johnson v.Shenandoah Life, supra, this Court quoted with approval fromAutomotive Acceptance Corp. v. Powell, 45 Ala. App. 596,234 So.2d 593 (1970):
 `The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts. . . .'
The court continued by observing:
 It seems to be generally held that an agent's apparent authority must be based upon the conduct of the principal and not of the agent. . . . (291 Ala. at p. 394, 281 So.2d at p. 640)
In Pearson v. Agricultural Ins. Co., 247 Ala. 485, 25 So.2d 164
(1946), cited at length in Union Oil, supra, this Court commented:
 While some suggestion has been made that a distinction exists between apparent authority and authority grounded on estoppel, 2 C.J.S., Agency, § 96, p. 1208, our cases and authority generally base the two upon the same elements.
 `"As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or
which he has permitted the agent to represent that he possesses and which the principal is estopped to deny." (emphasis added).
. . . . .
 `When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency. * * *' Halle v. Brooks, 209 Ala. 486, 487, 96 So. 341, 342.
 `The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent. This has been the view of practically all the cases on the point. * * *' 2 Am.Jur. p. 86, § 104. (emphasis added).
Although there is no evidence that Morris Rabren had express authority to act on behalf of NYTCO, the twelve NYTCO signs, with other circumstances to which we refer hereafter, provide a scintilla of evidence that Rabren was an agent of NYTCO through agency by estoppel principles. Regarding Ms. Wishum, the twelve NYTCO signs, with other circumstances to which we refer hereafter, again provide a scintilla of evidence that she was an agent of NYTCO through agency by estoppel.
Even though there is a scintilla of evidence that both Morris Rabren and Ms. Wishum were agents of NYTCO by estoppel, the plaintiffs must show that they relied upon NYTCO before they can recover. In Standard Oil, supra, the plaintiff was injured when he slipped and fell at defendant's service station. Plaintiff's evidence tended to show that he had relied upon the apparent operation by the company, Standard Oil, through its sign, license and telephone listing and that he continued to do business at the station. This Court held:
 Of course plaintiff must have relied upon such representations by the company. . . . (emphasis added).
The record discloses that all the plaintiffs stated they either dealt with or relied upon Covington Grain, Morris Rabren, or Mary Wishum. Thus, there was a scintilla of evidence as to each plaintiff that he relied *Page 882 
upon Covington Grain, Morris Rabren, or Mary Wishum. Furthermore, since NYTCO can only act through its agents, who here were Morris Rabren and Ms. Wishum, plaintiffs' reliance upon Rabren and Wishum raises a reasonable inference that they were relying upon NYTCO. J.C. Lysle Milling Co. v. NorthAlabama Grocery Co., 201 Ala. 222, 77 So. 748 (1917). Moreover, the record discloses that the plaintiffs, from the presence of the NYTCO signs in and around the area, the warehousemen's permit, and general access by Rabren and Ms. Wishum over the premises, in exercising their duties with respect to deliveries of soybeans, had reasonable cause to believe that Rabren and Ms. Wishum had authority to accept plaintiffs' soybeans on behalf of NYTCO. Therefore, the trial court did not err when it denied the defendants' motions for directed verdict and submitted the issue of agency to the jury.
The appellants also contend that the trial court abused its discretion in denying their motions for change of venue. The appellants recite the facts considered at the change of venue hearing and cite Ala. Code, Tit. 7, § 65, the general change of venue provision. However, this Court in Mathis v. Board ofSchool Commissioners of Mobile County, 289 Ala. 552,268 So.2d 822 (1972), observed:
 It has long been established in Alabama that the denial of a motion for a change of venue in a civil action is not such a ruling of the trial court as may be reviewed by this court on an appeal from a final judgment in the cause.
Therefore, we cannot here review appellants' contention that the trial court abused its discretion in denying the motions for change of venue.
The appellants raise several additional grounds on which the trial court committed error. First, they assert that it was error to admit into evidence Rabren's statements to some of the plaintiffs that NYTCO bonded Covington Grain. The trial court was not in error in admitting this evidence because under the evidence of Rabren's agency for NYTCO it is inferable that Rabren also had the authority to explain to customers the relationship between Covington Grain and NYTCO, both of whom occupied the same premises.
The appellants argue that these statements disclose a violation of the Statute of Frauds, Tit. 20, § 3 (3), Ala. Code.
Such an argument overlooks the fact that the plaintiffs have not sought to enforce any such oral contract as suggested by those statements made by Rabren and referring to a bond.
Second, the appellants argue the plaintiffs failed to meet the burden of proof as to the counts alleging negligence. The record shows that there was a scintilla of evidence that the appellants were negligent in caring for plaintiffs' soybeans. The appellants also contend that the plaintiffs were estopped to deny the title of a purchaser for value acting in good faith under Ala. Code, Tit. 7A, § 2-403; however, no purchaser for value is asserting title to the soybeans.
Third, the appellants contend that no contract of bailment existed between the parties. We have previously shown that there was a scintilla of evidence that a bailment contract existed.
Fourth, the appellants contend that, since NYTCO never had possession over the soybeans, no action for conversion can be maintained. As we have previously shown, NYTCO had possession over the soybeans through their agents, Morris Rabren and Mary Wishum.
Fifth, the appellants argue that the plaintiffs are estopped to assert Rabren's conversions of the soybeans against NYTCO. Because Rabren was an agent of NYTCO, his actions are attributable to NYTCO. Further, the plaintiffs did not act in any manner which would lead Rabren to believe he owned the soybeans.
Sixth, the appellants argue that there were no confidential relations between NYTCO and the plaintiffs to warrant a recovery for fraud under Ala. Code, Tit. 7, §§ 108 and 109. That argument is irrelevant here because of the relationship between the plaintiffs and NYTCO based on agency of Rabren through ostensible authority, *Page 883 
given to him by NYTCO, and his consequent ostensible authority upon which plaintiffs could rely.
Seventh, the appellants argue that the punitive damages could not have been awarded because no conversion or fraud was proven. Both conversion and fraud were supported by a scintilla of evidence, hence there was no error in awarding punitive damages.
Finally, the appellants argue that the verdicts are contrary to the court's instructions. A review of the record discloses that the verdicts are not contrary to the court's instructions.
We have carefully considered all the issues raised by the appellants and do not find any prejudicial error which would require a reversal of the trial court's judgment.
Accordingly, the judgment is affirmed.
AFFIRMED.
MADDOX, FAULKNER and SHORES, JJ., concur.
ALMON, J., concurs in result.