MADDOX, Justice.
This case involves a dispute between the administratrix of a deceased’s estate and a sister of the deceased, Wendall H. Dabbs, involving funds transferred by the deceased to his sister prior to his death. Specifically, the case involves two checks given by the deceased to his sister, one for $4,500.00 and one for $20,000.00. The deceased had cancer, and his sister contended that the money was given to her to pay for her brother’s medical and other expenses. The deceased’s daughter, Cynthia Smith, who was appointed administratrix of the estate, claimed that her father’s sister had “fraudulently and wrongfully schemed and designed to obtain the property of the decedent for herself without decedent’s adequate consideration....” She sought to recover the $24,500.00 for the estate.
I
The case was tried before a jury. The plaintiff/administratrix attempted to show that a constructive trust was created, and she sought to have the burden of proof placed on the defendant sister to account for the money. The defendant presented evidence that she had not only paid back the $24,500.00 to her brother or used it for his medical and other expenses, but that she had, in fact, expended more than that amount for his care.
At the close of the evidence, the trial court, ex mero motu, amended the plaintiff’s complaint to allege a contract claim, which the court believed conformed to the evidence that the deceased gave the $20,-000.00 check to his sister under an agreement with her that she would provide him with the necessary funds to take care of his ordinary and reasonable expenses. The plaintiff did not object to the amendment of the complaint by the trial court.
At the close of the evidence the court stated the theories of the case as follows: “THE COURT:
“[I]t is your theory ... that the defendant was given ‘X’ thousand dollars by the plaintiff estate, and she was to apply some of that to bills and to return the rest of it....
“MR. SALIBA:
“That would be our theory; that, you know, she has to account for it, or use it for the doctor’s bills.
“THE COURT:
“And it is your theory that she was, in fact, given that money, but she returned it?
“MR. SHERLING:
“Yes, sir.”
The Court determined that it would charge the jury that its duty was “to find, first what the agreement was and second, was the money returned or not.” The Court set out the elements of proof of plaintiff’s claim as (1) the existence of an agreement, (2) the terms of the agreement, (3) that monies were advanced pursuant to the agreement, and (4) that the money was still owed.
Even though the plaintiff did not object to the Court’s amendment of the pleadings, the defendant did. Prior to the court’s oral charge to the jury, the defendant filed a written objection, which reads as follows:
“Comes now the defendant, Erlene Petty, and excepts to the Court’s decision to charge the jury with regard to breach of contract. As grounds for her motion, defendant avers as follows:
*868 “1. Plaintiff has made no motion to amend its complaint to conform to the evidence.
“2. It is improper for the Court to amend to conform to the evidence ex mero motu.
“3. Defendant has been called upon to defend a charge of having exerted undue influence over plaintiff. The Court’s amendment places defendant in a position of defending a completely new charge.
“WHEREFORE, there being no evidence of undue influence having been exerted by defendant over plaintiff, defendant prays that plaintiffs complaint be dismissed or, in the alternative, the court charge the jury with regard to the law of undue influence.”
Plaintiff objected to only one aspect of the oral charge:
“Judge, the only exception we have is to the fourth category of the court’s charge that it would be on the plaintiff to prove that the money is -still owing. Under the law as taken from the Alabama Pattern Jury Instructions, once the money was delivered on her promise to deliver or to use this money to pay the doctor bills, then it became incumbent on her to account for the money because a trust is created in law. That’s the only exception, Judge.”
Plaintiff now contends the trial court erred in failing to give plaintiff’s requested written charges; however, plaintiff did not make an objection to the trial court’s refusal of the charges. In the objection he did make, as shown above, plaintiff’s counsel directed his objection only to “the fourth category of the court’s charge.”
Rule 51, Ala.R.Civ.P., provides, in part: “No party may assign as error the giving or failing to give a written instruction or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Submission of additional explanatory instructions shall not be required unless requested by the court.”
Plaintiff’s objection was directed at a portion of the court’s oral charge and not the requested written charges, and because plaintiff did not object to the failure of the court to give the requested written instructions, plaintiff is therefore precluded from assigning that failure as error. Rule 51, Ala.R.Civ.P.; Crigler v. Salac, 438 So.2d 1375, 1383 (Ala.1983).
The defendant concedes that, had the plaintiff objected to the court’s amendment to the complaint and had convinced the court to charge the jury concerning constructive trusts, the burden of proof would have shifted, and the defendant would have had the burden of rebutting a presumption of undue influence. McCollough v. Rogers, 431 So.2d 1246 (Ala.1983); Barnes v. Powell, 241 Ala. 409, 3 So.2d 80 (1941). However, defendants argue that because the plaintiff reserved no exception to the trial court’s amendment of the pleadings to conform to the evidence there is no prejudicial error to reverse. We agree.
The pleadings, as amended by the court, made the plaintiff’s claim to be one in contract. The burden of proof in an action on an agreement is on the plaintiff. Boling v. T.L. Farrow Mercantile Co., 203 Ala. 217, 82 So. 467 (1919).
Because plaintiff failed to object to the amendment of the complaint by the trial court, the plaintiff waived any right to object to the court’s failure to instruct the jury on her constructive trust theory. Assuming, however, that the decedent’s sister was required to make an accounting for the $24,500.00, we are convinced that there was sufficient evidence before the jury for it to conclude that she had satisfactorily accounted for all the funds that had been entrusted to her. See Miller v. Smoot, 238 Ala. 14, 189 So. 67 (1939). Consequently, we further hold that the plaintiff has shown no error or injury because of the failure of the trial court to instruct the jury with regard to the burden of proof in a constructive trust case. Rule 45, Ala.R. App.P.
*869 II
Plaintiff also raises an issue regarding a detinue claim that she had previously filed in district court concerning a Masonic ring and other property belonging to the deceased. The district court had, in effect, ordered the defendant to return to the estate all personal property she held that belonged to the deceased, including the Masonic ring. Case No. DV-83-3246-J (Mobile County District Court). The defendant appealed to the circuit court, claiming that she had returned all of the property that had belonged to her deceased brother, and claiming that she knew nothing of the ring’s whereabouts. The circuit court consolidated that action, CV-83-2579, with the undue influence claim, CV-84-000128, filed by the administratrix in the circuit court originally, and involved in this appeal.
At trial in the circuit court, the sister defended against the detinue claim on the ground that she had no knowledge of the ring’s location.
The trial court, at the request of the defendant, directed a verdict on the detinue claim, on the ground that the ring’s alternative value was not proven. The plaintiff’s exception to the directed verdict was duly noted by the trial court.
After reviewing the record, we are convinced that the trial court did not err in directing the verdict on plaintiff’s detinue count.
The record shows that the court asked the following question in connection with the detinue claim:
“All right. Has anybody proved their alternate value?”
Plaintiff's counsel responded, “No, sir ... but w;e have got the Masonic ring’s alternate value.” Plaintiff's counsel then claimed that alternate value had been proven. The record contains the following:
“MR. SALIBA: Well, the gold ring would obviously have value. They testified it had a diamond in it.
“THE COURT: How much value does it have?
“MR. SALIBA: Judge, it would have to be more than nominal.
“THE COURT: Well, what I am getting at is, if the jury does not have a figure with which to deal, the jury can’t speculate as to the value of a ring the jury has never seen.
“MR. SALIBA: Judge, we are asking for the return of the items.
“THE COURT: She has denied possession of them.
“MR. SALIBA: But she has not done it in the proper pleading form, Judge. As far as we know in her pleadings, she has pled that she — I think she just filed a general denial.
{{ # * *
“THE COURT: I believe the law will be that if you do not prove the alternate value, then you have not made out a case as to such items as you didn’t prove the alternate value in detinue.”
In view of the fact that the receipt mentioned in the record was the only evidence offered as to the value of the ring, we do not find prejudicial error in the refusal of the trial court to submit the detinue count to the jury. After an examination of the entire cause, it does not appear that any error committed by the trial judge in directing a verdict on the detinue claim injuriously affected any substantial right of the plaintiff, especially in view of the fact that the evidence to support the detinue claim was so speculative, as noted by the trial court.[1]
*870 We hold that the plaintiff failed to produce evidence essential to support her deti-nue claim, Beavers v. Harris, 265 Ala. 548, 93 So.2d 161 (1957); see also Heathcock v. Hadley, 380 So.2d 915 (Ala.Civ.App.1980). The trial court did not err to reversal in refusing to submit the detinue claim to the jury-
III
Finally, plaintiff raises an issue regarding certain testimony allowed by the trial court which she claims violates the dead man’s statute, Code 1975, § 12-21-163. Defendant’s counsel attempted to elicit from defendant the reason defendant mailed $10,000.00 to the deceased. Plaintiff objected to conversations that occurred between defendant and the deceased as violating the dead man’s statute. Defendant’s counsel, however, argued that the estate had waived any protection afforded by the dead man’s statute by failing to object when a surviving party was called as a witness and was questioned about transactions with or statements by the deceased. C. Gamble, McElroy’s Alabama Evidence, § 102.01(12) (3d ed. 1977). Defendant had already testified, without objection, with regard to the transaction with Dabbs by saying that Dabbs had given her $4,500.00, that he had given her $20,000.00, that she had mailed him $10,-000.00 when he was in Florida, and that she had transferred money from her account in Mobile to his account in Florida.
The plaintiff, Smith, had already testified that Petty had received $4,500.00 and $20,-000.00 from Dabbs, and that Petty had transferred $10,000.00 to Dabbs’s account by wire. A witness had been called by plaintiff and had already testified that Dabbs gave defendant a check shortly after he told her he was going to give her $20,000.00.
Defendant was attempting to account for the money she received from Dabbs, when plaintiff objected.
The court did not rule that plaintiff had waived protection afforded by the dead man’s statute by failing to object (McEl-roy, supra), but allowed defendant to testify “as to the reason the funds were given or advanced” to defendant, since plaintiff had raised the issue through prior testimony. Even if the evidence offered by defendant was improper, the ruling of the trial court was consistent with the rule of curative admissibility, and defendant was allowed to explain the extent of her transactions with Dabbs after receiving the payments from him. See McElroy’s Alabama Evidence, § 14.01. The court did not improperly allow into evidence statements made to the defendant by the deceased.
Based on the foregoing, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
ALMON, BEATTY, ADAMS and HOUSTON, JJ., concur.

. The record contains the following concerning proof that the ring was in defendant’s possession:
"MR. SHERLING: Judge, also, I have a motion with regard to civil action 83-3246, which is the appeal from district court with regard to the items that have been listed on the board here. There is absolutely no testimony to indicate that this lady took those items. In fact, the most recent witness just testified that all he could say is that the items were missing.
“THE COURT: All right. What proof is there other than that they weren’t there, Mr. Saliba? . "MR. SALIBA: Judge, the testimony was to the effect that when they got back and found a missing check where the thing had been rampaged through, which turned out to be a Twenty-Thousand-Dollar check, which was when they first became aware that there was *870 something awry, and that she had testified they had already filed the action after they told them they couldn’t have the things, but then they became even more aware that whoever broke into that trailer was the same person who would be concealing the presence of the Twenty-Thousand-Dollar check. I think that’s a conclusion that can be reached under the evidence, and the mere fact that they ordered them from the property at a time when they might could have preserved any property that was still out there. Until this boy reported these things stolen based on their word after they had been discovered, they had made no efforts to report a theft of that trailer.
"THE COURT: Well, I make the same ruling on that as the other motion. I will rule on both of them—
"MR. SHERLING: Judge, if I might, just one final comment in parting on that. The police report that we introduced into evidence indicated that Mr. Dabbs made a report saying that the door had been pried open and pushed in. And he said he had no indication that his aunt [the defendant] had done that.
"MR. SALIBA: Your Honor, I think—
"THE COURT: I will rule on it at the end of all the evidence.”