(116 So. 420)

**TENNESSEE CHEMICAL CO. v. CHEAT-HAM et al.** (3 Div. 822.)

Supreme Court of Alabama. April 5, 1928.

**1. Sales ⬲7—Contract for sale of fertilizers held to establish relation of principal and agent between complainant and corporation of which defendants were officers.**

Contract for sale of fertilizers on commission alleged in complainant's bill *held* to establish relation of principal and agent between complainant and corporation of which defendants were officers.

**2. Sales ⬲7—That corporation of which defendants were officers executed notes for price of fertilizer as guaranty of compliance with contract did not convert agency contract into one of sale.**

That corporation of which defendants were officers executed its notes to complainant for sum covering price or value of fertilizer as guaranty of compliance with contract did not convert agency contract for sale of fertilizer into one of sale and make relationship between complainant and corporation that of purchaser and seller.

**3. Torts ⬲22—All participating in tort, whether principal or agent, are equally liable to party injured.**

All who participate in wrong or tort, whether principal or agent, are equally guilty and liable to party injured.

**4. Corporations ⬲306—Under terms of agency contract between complainant and corporation, officer signing personally guaranteed compliance on corporation's part.**

Under terms of agency contract for sale of fertilizer on commission providing, "if you are a corporation, the officer or officers signing this contract on behalf of same shall be liable to us

for carrying out all terms and conditions hereof," officer who signed contract personally guaranteed compliance with it on part of corporation.

**5. Bankruptcy ⬦363—Under fertilizer agency contract, principal could pursue corporation agent and its manager for converting fertilizers to own use, until claim was fully satisfied, notwithstanding corporation's bankruptcy.**

Under fertilizer agency contract providing that corporation officer signing contract should be liable for carrying out terms of contract, where corporation's manager converted fertilizers to his own use or to use of corporation, principal had right to pursue both corporation and its manager; notwithstanding corporation's bankruptcy, and could recover from all sources until its claim was fully satisfied, but no longer.

**6. Fraudulent conveyances ⬦263(2)—Bill alleging stock in new corporation was issued to defendant's wife to defraud defendant's creditors held to contain equity.**

In suit by principal against officers of corporate agent and others on ground that defendants converted fertilizers to their own use or to use of corporation, and that after original corporation became bankrupt defendant had had stock in new corporation issued to his wife, although paid for by him, in order to hinder, delay, and defraud his creditors, *held* bill contained equity as to stock in new corporation.

**7. Corporations ⬦325—Generally, corporate creditor cannot hold officer responsible for mere neglect.**

As general rule, corporate creditor cannot hold an officer or agent of corporation responsible for mere neglect or ultra vires act, as distinguished from fraudulent transfer or misapplication of corporate assets from payment of corporate debts.

**8. Corporations ⬦360(1)—Bill alleging that defendant failed to discharge duty as director of corporation acting as agent for complainant held demurrable.**

Bill alleging that defendant was director in corporation which had entered into fertilizer agency contract with complainant, and that it was her duty to see that agency contract had been complied with, and alleging in alternative that she either actually participated in wrongs on part of manager in converting property or that she negligently in disregard of her duty permitted the wrong, thereby alleging that she failed to discharge her duty as director, *held* subject to demurrer.

Appeal from Circuit Court, Butler County; A. E. Gamble, Judge.

Bill in equity by the Tennessee Chemical Company against J. A. Cheatham, Bertha Cheatham, Jessie B. Black, and the Royal Mercantile Company. From a decree sustaining a demurrer to the bill, complainant appeals. Reversed and remanded.

The bill as amended alleges that during the year 1923 complainant and the Farmers' Mercantile Company, a corporation, entered into a contract, exhibited with the bill, whereby said Farmers' Mercantile Company was appointed "an agent for the sale, on commission and for" complainant's "account, of such quantities and brands of fertilizers as may be mutually agreed upon from time to time on the following terms and subject to the conditions hereinafter mentioned, and you (Farmers' Mercantile Company) hereby accept the appointment and agree to comply with all the terms and to perform all the conditions hereof." The contract sets forth stipulations as to territory, brands, prices, etc. By the ninth paragraph of the contract the Farmers' Mercantile Company agreed "to take cash or promissory notes, in settlement for all fertilizers sold by" it "for" complainant "under this contract, and to remit said cash to" complainant "promptly as received by" it. The Mercantile Company "agree(s) to take said promissory notes representing the proceeds of time sales, upon" complainant's "forms, payable to" complainant's "order, drawn to conform to terms, and to bear interest at the rate designated by" complainant, "and to deliver said notes to" complainant "on or before settlement date designated by" complainant "for the selling season during which" the Mercantile Company makes "such time sales." Farmers' Mercantile Company agreed "to remit" complainant "promptly all amounts collected on said notes, and when the amount due" complainant "hereunder is fully paid and discharged," complainant "will surrender" the Mercantile Company's "guaranty notes to" it, "and also transfer to" it "all, if any, uncollected farmers' notes. All fertilizers consigned to" the Mercantile Company "hereunder and the cash, notes, accounts, and the proceeds thereof resulting from the sale of said fertilizers, shall at all times be and remain" complainant's "property. All cash received by" the Mercantile Company "on cash sales or collections shall be kept by" the Mercantile Company "separate and distinct and promptly remitted to" the complainant. By paragraph 10 it is provided that the Mercantile Company "expressly guarantee(s) prompt payment, without" complainant's "first exhausting remedies against principal debtors, of all notes and accounts resulting from time sales made by" the Mercantile Company, "and also given to" complainant by the Mercantile Company "as a substitute accounting thereunder." The Mercantile Company "hereby waive(s) demand, protest, and notice of default in payment by principal debtors of said notes and accounts. As evidence of" its "said guarantee," it "agree(s) to execute and deliver to" complainant "on the settlement date designated by" complainant "for each selling season, or sooner if required," its "negotiable promissory note or notes, upon" complainant's "forms, for all fer-

tilizers delivered hereunder and not settled for in cash at the time of the execution and delivery of said note or notes * * * Said guaranty note or notes shall be drawn to conform to terms, and to bear interest at the rate designated by" complainant.

The bill alleges that during the year 1926 complainant consigned and delivered to the Farmers' Mercantile Company fertilizers, under the terms of the contract, amounting in the aggregate to $3,000; that pursuant to the terms of the contract the Mercantile Company received said fertilizers delivered to it by complainant as agent, in trust, and agreed, obligated, and bound itself to take only cash or promissory notes in settlement for all fertilizers sold by it for complainant, and to remit such cash promptly as received, and that promissory notes, taken on times sales should be taken on forms furnished, payable to complainant, and to promptly deliver said notes to complainant.

It is further alleged that defendants J. A. Cheatham and Jessie B. Black were the principal stockholders in the Farmers' Mercantile Company, and Cheatham was the managing head, thereof, and as such, or acting or professing to so act, committed the wrongs complained of; that is, that it became and was the duty of said corporation, or the managing officers or agents thereof, to comply with the terms of the contract with complainant, and to transmit to it all cash received for such fertilizers as received, and all notes taken on time sales, yet, notwithstanding, said corporation, or Cheatham acting for it in that behalf, with full knowledge of the facts and of the trust reposed in Cheatham by virtue of said contract between it and complainant, sold a portion of said fertilizers for cash and the remainder on time, taking notes or mortgages therefor not on forms provided by complainant, but payable direct to said corporation, all amounting to $3,000 or more; that none of said cash proceeds or notes or mortgages were turned over to complainant, but, in express violation of his duty and trust in the premises, Cheatham wrongfully, unlawfully, and fraudulently converted said fertilizers to his own use or the use of said corporation, or others; that said Cheatham, pretending to act on behalf of said corporation, sold, transferred, or assigned to the Bank of Greenville all or a large portion of said notes or mortgages taken by him from customers for fertilizers sold, so that same were placed beyond the reach of complainant, and wrongfully and unlawfully converted the cash received for fertilizers; that the contract provides that "if you are a corporation, the officer or officers signing this contract on behalf of the same shall be liable to us for the carrying out of all the terms and conditions thereof," and further, that "no fertilizer shall be used or taken by you on your own account, nor be delivered to your tenants unless by special written permission by us," which said

217 ALA.—26

contract was violated and disregarded by defendant Cheatham as aforesaid.

As a predicate for a discovery and accounting, it is alleged that a large number of notes and mortgages were taken by the Farmers' Mercantile Company for fertilizers sold, in many instances being taken from customers of the Mercantile Company in gross for such fertilizers and other merchandise sold, and that complainant does not know the exact amount of fertilizers sold nor the amount thereof sold for cash.

It is further alleged that the Farmers' Mercantile Company executed to complainant its several promissory notes, pursuant to the terms of the contract, for fertilizers delivered to it in trust, in the amount of $3,000; that said notes were not paid at maturity; that complainant obtained judgment against the Mercantile Company for the amount of said notes, which judgment is still unpaid; and that subsequently the Mercantile Company was adjudged a bankrupt, and the bankrupt estate is utterly insolvent.

The bill further avers that Jessie B. Black was a member of the board of directors of the Farmers' Mercantile Company, and as such it was her duty to see that said contract was carried out as far as could be legitimately done, or to exercise reasonable care to see that no wrongful conversion, misappropriation, or fraudulent disposition was made of the fertilizers delivered to the Mercantile Company, yet, notwithstanding her duty in the premises, she either actively participated in the accomplishment of the wrongs on the part of Cheatham, or negligently, in disregard of her duty, permitted same to be done.

It is further averred that subsequent to the bankruptcy of the Farmers' Mercantile Company, J. A. Cheatham, Bertha Cheatham, L. H. Black, and Jessie B. Black formed a new corporation, the Royal Mercantile Company, J. A. Cheatham and L. H. Black subscribing for one share of stock each, and Bertha Cheatham and Jessie B. Black subscribing for 24 shares each, of the capital stock; that the stock subscribed for and received by Bertha Cheatham, the wife of J. A. Cheatham, was not paid for by her, but was paid for by her husband, who placed the stock in her name for the purpose of hindering, delaying, and defrauding complainant and other creditors of J. A. Cheatham, was in truth a gift to her, and should be subjected to complainant's demand, said J. A. Cheatham and Bertha Cheatham being insolvent except for their interest in the Royal Mercantile Company.

It is prayed that defendants J. A. Cheatham and Jessie B. Black be required to account to complainant for the fertilizers received under the contract from complainant, and that a decree be rendered against them for the damages sustained by complainant in the premises; that the stock standing in the name of Bertha Cheatham in said Royal Mercantile Company, also that held by J. A.

Cheatham, be declared as held by them as trustees in invitum for the benefit of the creditors of J. A. Cheatham, and condemned to the satisfaction thereof. There is also prayer for general relief.

The twenty-fifth ground of defendants' demurrer is as follows:

"25. For that the averments of said bill of complaint show that the complainant had sold fertilizers to Farmers' Mercantile Company under a contract, copy of which is attached as Exhibit A to the bill of complaint, and, with full knowledge on its part that the Farmers' Mercantile Company had not complied with the terms of the contract, Exhibit A, accepted from Farmers' Mercantile Company its promissory notes in settlement of said fertilizers and sued to judgment the said notes so executed to it by Farmers' Mercantile Company."

Steiner, Crum & Weil, of Montgomery, for appellant.

The contract involved is one of agency, and does not create merely the relation of buyer and seller. Swift & Co. v. Bullard & Son, (D. C.) 3 F.(2d) 814; Bowdoin v. Ala. Chem. Co., 201 Ala. 582, 79 So. 4; Williams v. V. C. Chem. Co., 182 Ala. 413, 62 So. 755; South Atl. Guano Co. v. Childs, 211 Ala. 637, 101 So. 445. All who actively participate in the commission of a wrong or tort, whether principal or agent, are equally guilty, and liable to the party injured. 3 Cook on Corp. (8th Ed.) 2724; 1 Cooley on Torts (3d Ed.) 244; Lee v. Mathews, 10 Ala. 682, 44 Am. Dec. 498; Perminter v. Kelly, 18 Ala. 716, 54 Am. Dec. 177. By obtaining judgment on the notes executed by the Farmers' Mercantile Company under its contract of guaranty, complainant did not waive its right to hold it or the individuals accountable for the conversion or destruction of its property. County Comm. v. Hurley (C. C. A.) 169 F. 92; Merrill v. Nat. Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Chemical Nat. Bank v. Armstrong (C. C. A.) 59 F. 373, 28 L. R. A. 231; Re N. Y. Chem. Co. (C. C.A.) 233 F. 906.

Thigpen & Poole, of Greenville, for appellees.

The bill is without equity as one to fasten liability on the respondent stockholders. Force v. Age Herald Co., 136 Ala. 278, 33 So. 866; Hall v. Ala. Term. Co., 173 Ala. 398, 56 So. 235; Wilson v. Stevens, 129 Ala. 630, 29 So. 678, 87 Am. St. Rep. 86; Farmer v. Brooks, 213 Ala. 137, 104 So. 322; Thompson on Corp. (2d Ed.) § 1219; Rudisill Co. v. Eastham Co., 210 Ala. 145, 97 So. 219; O'Bear v. Volfer, 106 Ala. 205, 17 So. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31. The contract was for sale of fertilizers, and not a contract of agency. Jackson v. State, 2 Ala. App. 226, 57 So. 110; Stegall-Cheais v. Bethune Co., 181 Ala. 250, 61 So. 274; Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620; Killian v. Triggs Co., 209 Ala. 352, 96 So. 409.

By accepting and suing on the notes of the Mercantile Company, complainant elected to treat the matter as a sale of the fertilizers, and is estopped from claiming that the fertilizers belonged to it. L. & N. R. Co. v. Williams, 210 Ala. 268, 97 So. 817; Wilson v. Stevens, 129 Ala. 630, 29 So. 678, 87 Am. St. Rep. 86; Lytle v. Bank, 121 Ala. 218, 26 So. 6. If any ground of the demurrer is well taken, the decree should be sustained. Cahaba Coal Co. v. Elliott, 183 Ala. 298, 62 So. 808; Tatum v. Tatum, 111 Ala. 209, 20 So. 341; Gaynor v. Baeur, 144 Ala. 448, 39 So. 749, 3 L. R. A. (N. S.) 1082; Howell v. Howell, 171 Ala. 502, 54 So. 601.

ANDERSON, C. J. [1, 2] The contract in question established the relation of principal and agent between the complainant and the Farmers' Mercantile Company. Bowdoin v. Alabama Chemical Co., 201 Ala. 582, 79 So. 4. Nor did the fact that the Farmers' Mercantile Company executed its notes to the complainant for a sum covering the price or value of the fertilizer as a guaranty of a compliance with the contract, as per the averment of the bill, and the provisions of the contract, convert said contract into one of sale and make the relationship of the two companies that of purchaser and seller. Swift & Co. v. Bullard & Son (D. C.) 3 F.(2d) 814.

The case of Jackson v. State, 2 Ala. App. 226, 57 So. 110, whether in conflict with this holding or not, is not binding on this court.

As we understand, the bill does not charge that the notes given by the Farmers' Mercantile Company to the complainant were in satisfaction or settlement of the price of the fertilizer as pointed out by some of the grounds of demurrer, especially ground 25, but that they were given as a guaranty of a compliance with the terms of the agency in the sale of the fertilizer. Yet, when the notes were reduced to judgment against the Farmers' Mercantile Company, this was conclusive as between the said company and this complainant, and the only question that could possibly arise as between these parties was, perhaps, whether or not the said judgment was for such a wrong or tort as would remove it from the influence of the adjudication of the bankruptcy of said company. Swift & Co. v. Bullard & Son, supra. This is a matter, however, with which we are not concerned and should have been more properly adjudicated in the bankrupt court.

[3, 4] The bill, however, charges a conversion or tort on the part of the Farmers' Mercantile Company as to the cash sales of the fertilizer and the notes which should have been made payable to the complainant and that J. A. Cheatham was managing head of said respondent corporation. It is a well-settled proposition that all who participate in a wrong or tort, whether principal or agent, are equally guilty and liable to the party injured. 3 Cook on Corporations (8th Ed.) p.

2724, § 682; Cooley on Torts (3d Ed.) p. 244; Emery & Co. v. Am. Refrigerating Co., 193 Iowa, 93, 184 N. W. 750, 20 A. L. R. 86, and note. Apart from this, the contract specially provides:

"If you are a corporation, the officer or officers signing this contract on behalf of the same shall be liable to us for carrying out all the terms and conditions hereof."

J. A. Cheatham signed the contract and under the terms of same personally guaranteed a compliance with it upon the part of the Farmers' Mercantile Company.

[5] The complainant therefore had the right to pursue both, the Farmers' Mercantile Company and the said Cheatham notwithstanding the bankruptcy of the former, and could recover from all sources until its claim was fully satisfied, but no longer. Board of Coms. v. Hurley (C. C. A.) 169 F. 92.

[6] The bill as amended charges that the stock in the new corporation issued to Mrs. Cheatham was in fact paid for by J. A. Cheatham and was but a gift and was made to hinder, delay and defraud the creditors of said J. A. Cheatham. As to the stock in the new corporation in the name of J. A. Cheatham and also his wife, the bill contained equity, and the trial court erred in sustaining the demurrer to the entire bill on the ground that it was without equity.

[7, 8] As to Jessie B. Black, the bill charges that she was a director in the Farmers' Mercantile Company and it was her duty to see that the contract had been complied with, and then charges in the alternative that she either actually participated in the wrongs on the part of Cheatham or she negligently, in disregard of her duty, permitted the wrong. Therefore, measuring the averment by its weakest link, the said Jessie B. Black merely failed to discharge her duty as a director. As a general rule a mere corporate creditor cannot hold an officer or agent of a corporation responsible for a mere neglect or ultra vires act as distinguished from a fraudulent transfer or misapplication of corporate assets from the payment of corporate debts. Force v. Age Herald Co., 136 Ala. 271, 33 So. 866. "Directors may not be liable to corporate creditors for, negligence in the management of the affairs of the corporation." Cook on Corporations, § 735. "Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is solvent or insolvent." O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31. We think the bill fails to set up such a state of facts as would render the respondent Jessie B. Black personally liable to the complainant for the things complained of and was subject to her demurrer.

The trial court seems to have sustained a demurrer to the entire bill as for want of

equity, and in this there was error, and the decree is reversed and the cause is remanded, and the cost of this appeal will be taxed one half to the complainant and the other half to J. A. Cheatham and his wife, Bertha Cheatham.

Reversed and remanded.

SOMERVILLE, THOMAS, and BROWN, JJ., concur.