213 So.2d 250

**ALABAMA MUSIC CO., Inc., et al.**

**v.**

Emogean NELSON.

**3 Div. 330.**

Supreme Court of Alabama.

July 18, 1968.

· Jesse M. Williams, III and Charles E. Porter of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellants.

J. Paul Lowery, Montgomery, for appellee.

MERRILL, Justice.

This appeal is from a judgment in favor of appellee, Mrs. Emogean Nelson, against appellants, Alabama Music Co., Inc. and Joseph E. Capilouto, in the sum of $2,300. Appellants' motion for a new trial was overruled.

H. L. Nelson, husband of appellee, was an original party, but he was stricken as a party plaintiff and Franco Distributing Co. was stricken as a party defendant.

Appellee's complaint consisted of three counts. Count A charged the appellants with the wrongful taking of certain goods and chattels, the property of appellee. Count B alleged trespass to certain realty. Both counts sought compensatory and punitive damages. Count C charged trover for the conversion of the same goods and chattels listed in Count A, and sought only compensatory damages.

On April 2, 1962, F. A. Walker was doing business on High Street under the name of High Street Sandwich Shop. He purchased certain restaurant equipment, including three double booths and tables, from Helburn Company under a conditional sales contract for the unpaid balance. Helburn Company assigned and transferred the contract to First National Bank of Montgomery.

Later, Walker began working for appellant Alabama Music Co. and was told by appellant Capilouto that he would have to devote his full time to his job. Walker sublet the premises on High Street in 1963 to appellee, who also purchased Walker's restaurant equipment, which included that which Walker had purchased from Helburn. Appellee paid $1500 down and agreed to pay $2000 on time. She paid $500 over the next five months, leaving a balance of $1500.

On May 30, 1963, appellee subleased the premises to one Vollenweider and sold the equipment to him for $3000, $1500 down and $1500 on time. Appellee gave the $1500 down payment to F. A. Walker who gave her a receipt that the account was paid in full. Walker may have paid some of the $1500 on the sales contract to the First National Bank, but it later developed that he owed a balance of $404.60.

Vollenweider made only three payments under his agreement with appellee and in September, 1963, he left and Jimmy Goodson came in and began running the business. Appellee employed an attorney to collect from Vollenweider and a release

was secured from Vollenweider to any claim to the property.

On January 7, 1964, Jimmy Goodson borrowed some money from Alabama Music Co. through Capilouto and gave as security a trust receipt on the equipment in High Street Sandwich Shop. Some payments were made by taking Goodson's fifty per cent share of the Rockola receipts but the entire amount was not paid.

In April, 1964, the First National Bank was about to repossess the restaurant equipment sold by Helburn to Walker and which debt Walker had not satisfied even though appellee had paid her debt to Walker in full. Walker still worked for appellants and he sought the aid of Capilouto, who paid the balance due on the conditional sales contract ($404.60), and the bank assigned the paper to Alabama Music Co. without recourse.

Goodson went out of possession in January, 1965, and appellee began to operate. At this time, she was operating under a lease which had been made on the premises to her husband for her benefit. Appellee took an inventory and found some missing items. She made a telephone call to Capilouto to report that some equipment was missing. During the conversation, Capilouto indicated that the equipment belonged to him. Appellee stated that she owned the property and the matter was dropped, but Capilouto told appellee that he would attempt to recover the property from Goodson. Goodson admitted to Capilouto that he had taken equipment with him and Capilouto sent his truck and got several items and returned them to the High Street location.

In February, 1965, Doris Harris went in to possession, but much of the equipment listed as missing when Goodson left still had not been returned and was not returned while Doris Harris was in possession. On July 5, 1965, Doris Harris notified Alabama Music Co. that she was closing the shop and requested that they come and divide the money out of the juke boxes and bowling machines with her. Morris Dale, President of Alabama Music Co., at the direction of Capilouto cleared the machines of all money. Later that day, Doris Harris came by and left the key to the shop with Capilouto. A few days later, Capilouto sent Norman Brown, an employee of Alabama Music Co., to the High Street Sandwich Shop and told him to get the four booths and tables and deliver them to Viola's Place on West Jeff Davis Street. Brown did as he was told.

That evening, Capilouto received an anonymous telephone call telling him the equipment he had ordered removed belonged to appellee. Capilouto called his attorney and was advised to take the booths and table back immediately. The next morning, they were taken back to the High Street location.

On July 11 or 12, appellee went to the premises to show them to a client, but the booths were gone at that time. A few days later, appellee returned and the booths were back in the building.

Appellants' first argued assignment of error is that the trial court erred in overruling defendant Capilouto's motion for a new trial on the ground that the verdict of the jury and the judgment thereon are contrary to the great weight and preponderance of the evidence in the case. Appellants contended "that the great weight and preponderance of the evidence in the case shows that, in all actions complained of by Appellee, Joseph E. Capilouto was acting as an officer of and in behalf of Alabama Music Co., a corporation."

Even though Morris Dale carries the title of President of Alabama Music Co., it is clear that Mr. Capilouto is the boss. Dale testified "Mr. Capilouto told me, 'Take the key, meet Norman at the Sandwich Shop on High Street and open it up so he could pick up some booths.'" Capilouto testified that he handled most of the agreements about placing juke boxes and gaming devices in places of business, but sometimes other employees handled the

matters. There is no question but that Capilouto made the important and policy decisions.

A corporation in its relations to the public is represented and can act only through its duly authorized servants, agents or employees. United States Fire Ins. Co. v. Hodges, 275 Ala. 243, 154 So.2d 3. It is admitted that Capilouto was an officer and an agent and an important one.

In Lee v. Mathews, 10 Ala. 682, this court said:

"The general rule of law, that agents properly authorized, acting for a known principal, without any personal undertaking, are not individually responsible, does not apply to torts, because no one can lawfully command another to commit a wrong. It is also clear, that every unlawful intermeddling with the goods of another, is a conversion; and it is no answer to the true owner, that the person so receiving the goods, was ignorant of his title, or that he received them for the use or benefit of another. The taking, or receiving of them, being a conversion, his subsequent disposition of them, will not exonerate him from liability. * * *"

Capilouto was clearly liable for his own acts and is not entitled to claim that his liability should be shifted wholly to Alabama Music Co. See also Southeastern Construction Co. v. Robbins, 248 Ala. 367, 27 So.2d 705.

We are also not impressed with the argument that any trespass was committed by the truck driver, Norman Brown, and not Capilouto. We have held that one may commit a trespass through another as his active agent or joint participant, although the one may not be present at the time, taking any personal hand in the trespass. He must be directing, aiding, participating in, or must ratify the trespass. Chambers v. Cagle, 271 Ala. 59, 123 So.2d 12. The undisputed evidence here is that Capilouto ordered, directed and ratified the alleged trespass. There is no merit in assignment 1.

Appellants' assignment 4 charges that the court erred in refusing to give the requested affirmative charge without hypothesis as to Count II of the complaint, as amended, which charged trespass quare clausum fregit to the premises on High Street. The requested charge reads:

"'IX. The Court charges the jury that you may not return a verdict in favor of the plaintiff Imogean Nelson in this case under Cout [sic] II of the complaint, as amended."

There is no "Count II" of the complaint and the trial court will not be put in error for the failure to give a charge referring to a non-existent count. The court considers specially requested charges in the precise language in which they are offered. When they are inapt in expression, it is not error to refuse them. Sims v. Kent, 221 Ala. 589, 130 So. 213.

Assignment 5 raises the ground that the verdict was excessive.

As already noted, punitive damages were alleged in Counts A and B, but not in Count C.

The verdict was general, reading: "We the jury find for the plaintiff damages in the amount of $2,300.00 Dollars." The verdict, when general, can be referred to the good counts, and there is no contention here that Counts A and B, which claimed punitive damages, are insufficient.

The trial court instructed the jury, in part, as to Count A:

"Now, in this Count she has also claimed punitive damages. We, in the law, use the word punitive damages or exemplary damages. They are really pretty well self-defining, and they are not value that she may actually have sustained. But, it is damages that a Jury would award under the law, as I am going to bring it to you, to punish, punitive—punish, or make an example of, ex-

emplary, this Defendant in order to deter others from committing a like offense or a like wrong."

The court then defined punitive damages. As to Count B, the court instructed, in part:

"The guideline there would be the value of the realty before the trespass and the value of the realty immediately after the trespass. There, again, he is asking for punitive damages, and you may give punitive damages, or if there was no damage done to the realty, even though you— if you feel under the burden of proof that I am going to lay down to you, if you feel that the Defendants' acts were such that punitive damage should be awarded."

Appellants took no exception to the oral charge. Referring the amount of the verdict to the two counts, which included punitive damages, we are not convinced that the verdict was excessive.

In deciding whether to award punitive damages under Counts A or B, the jury could have found that F. A. Walker was an employee of appellants, that appellee paid him in full for the equipment he had mortgaged to a bank, that Walker left a balance due on it of $404.60, that appellants sought to get over $3000 worth of equipment by paying off this balance and getting the mortgage assigned to them, that Capilouto knew Walker had sold to appellee, that appellants kept their own equipment—juke boxes and gaming devices—on the premises for which they knew appellee was responsible, that Capilouto knew where Goodson carried appellee's property when he quit operating the shop and had part of it returned to appellee, but he made no attempt to locate items other than the restaurant equipment which Goodson had included in his trust receipt to appellants, and that they deliberately took the equipment belonging to appellee away from the premises and did not return it until their attorney told them to replace it immediately.

We cannot say that the verdict was excessive.

Assignments of error 6 and 7 charge error in the overruling of objections to the following questions asked President Morris Dale on cross examination:

"Q And do the patrons gamble or bet on the results of these machines?

"Q What kind of money did you make out of this Rock-Ola, and all these gambling machines out of Mrs. Nelson's place?"

The objections to both questions were that they were not relevant.

The answer to the first question was "I don't know." The overruling of an objection to a question is harmless where the witness answers that he does not know, or does not remember. Tankersley v. Webb, 263 Ala. 234, 82 So.2d 259; Lehigh Portland Cement Co. v. Dobbins, (6 Div. 507) (282 Ala. 513, 213 So.2d 246.

The answer to the second question was "I might get for our part maybe twenty-five or thirty dollars a week." Conceding, without deciding, that the question was not relevant, we find no reversible error.

The determination of whether or not particular evidence is relevant rests largely in the discretion of the trial court. Bradley v. Jones, (3 Div. 500), Ala., 211 So.2d 465 [1]; Roan v. Smith, 272 Ala. 538, 133 So.2d 224. We cannot say that the trial court abused its discretion, especially since there was evidence before the court that some of the operators of the shop on High Street paid their bills with their half of the proceeds from the juke boxes and gaming devices.

Assignment 9 reads:

"Plaintiffs' attorney objected 'to any testimony concerning whether or not there was a beer license out at this place', to which defendants' attorney made a showing that defendants' witness Suttle's testimony would be used to show

[1]. Ante p. 331.

that loss of profits was from inability to acquire a beer license and not loss of use of the equipment for twenty-four hours to a week (T.p. 139), whereupon plaintiffs' attorney renewed his objection which was sustained by the trial court (T.p. 140). It is in sustaining plaintiffs' attorney's objection to any further testimony of defendants' witness, Suttle, that the defendants assign as error on behalf of the trial court."

Counsel attempts to set out in narrative form what happened in connection with a question asked W. R. Suttle of the Alabama Alcoholic Beverage Control Board. The narrative does not include all that was said by the trial court and counsel for the parties. A better practice is to quote from the record, showing exactly what was said and the exact rulings of the trial court. Actually, the court made two rulings, none on page 139 and two on page 140. The record shows:

"MR. PORTER: We stipulate that if you will stipulate after Doris Harris left there Mr. Suttle and the ABC Board would not issue another liquor license for this premises.

"MR. LOWERY: We object to that as wholly irrelevant.

"THE COURT: Sustain.

"MR. LOWERY: And I ask the Court to instruct this Jury not to consider it.

"MR. PORTER: That is the only reason we have to show by Mr. Suttle.

"THE COURT: I am going to sustain the objection and instruct the Jury not to pay any attention to the argument of the lawyers here."

We cannot say that the trial court's rulings amounted to reversible error and the first ruling was clearly correct. An assignment of error which embraces more than one ruling must, to be sustainable, be good as to all. Powell Ambulance Service v. Cooley, 273 Ala. 58, 134 So.2d 193; Lane v. Housing Authority of City of Elba, 270 Ala. 383, 118 So.2d 725, and cases there cited.

We find no reversible error in the assignments of error argued in brief.

Affirmed.

LIVINGSTON, C. J. and LAWSON and HARWOOD, JJ., concur.