880 So.2d 434 (2003)
GALACTIC EMPLOYER SERVICES, INC.
v.
Clarence McDORMAN and Thomas "Slate" McDorman.
2020094.
Court of Civil Appeals of Alabama.
July 11, 2003.
Certiorari Denied October 10, 2003.
*435 Leatha Gilbert of Gilbert & Cook, PC, Birmingham, for appellant.
Don F. Wiginton, Birmingham, for appellees.
Alabama Supreme Court 1021789.
CRAWLEY, Judge.
Galactic Employer Services, Inc. ("Galactic"), appeals from the trial court's summary judgment in favor of Clarence McDorman ("Clarence") and Thomas "Slate" McDorman ("Slate"). We affirm.
Zeyad Awwad was hired as the chief executive officer of Matrix, Inc., a corporation that provided "e-commerce" solutions and computer-network support and that designed Internet Web pages. Before he was hired by Matrix, Awwad had been *436 serving a sentence in a federal penitentiary, and, at the time of his hiring, he was on work release. Clarence, who was the chairman of Matrix's board of directors, conducted an investigation into Awwad's background before Awwad was hired.[1] After Awwad was hired, Matrix entered into an agreement with Galactic for Galactic to provide payroll services for Matrix. Galactic eventually received an insufficient-funds notice on a draw it had made from Matrix's account. However, Galactic continued providing its payroll services to Matrix based on Awwad's alleged representation to Blan Marriott, the president of Galactic, that Matrix would provide payment for its payroll debt. Some payments on that debt were subsequently made by Matrix, as well as by Clarence and by Slate, the vice president of Matrix. Awwad was eventually fired after it was discovered that he had misused Matrix's funds and had created significant debt. The debt owed to Galactic remained unpaid.
Galactic initially sued Slate; Matrix; Sean Andrews, a shareholder in Matrix; Awwad; and other fictitiously named defendants, seeking compensatory and punitive damages on claims of breach of contract, unjust enrichment, fraud, misrepresentation, and civil conspiracy. Slate and Andrews both filed motions to dismiss that were denied; then, they each filed an answer. Andrews was subsequently dismissed as a defendant by a joint stipulation. Service was not perfected on Matrix, and Galactic's claims against it were dismissed, without prejudice. Galactic subsequently filed an application for entry of default against Awwad. The trial court entered a default judgment against Awwad in the amount of $20,120.54.
Galactic amended its complaint to include Clarence as a defendant and to add counts alleging negligence, wantonness, joint enterprise, and vicarious liability, and it sought to pierce the corporate veil; it amended its complaint a second time to dismiss its breach-of-contract claim against Clarence and Slate. Clarence and Slate filed motions for a summary judgment, with supporting evidentiary materials; in response, Galactic filed oppositions to the motions for a summary judgment, with supporting evidentiary materials. On Galactic's motion, the trial court reinstated Matrix as a defendant, and Matrix filed an answer. Galactic also filed a cross-motion for a summary judgment.
The trial court entered an order granting a summary judgment to Clarence and Slate, specifically finding "that said defendants owed no legal duty to the plaintiff under the undisputed facts of this case." Galactic's claims against Matrix remained pending. Matrix filed no response to Galactic's motion for a summary judgment, and the trial court entered a summary judgment in favor of Galactic and against Matrix in the amount of $33,124.20, based on Galactic's breach-of-contract claim. Galactic then appealed to this court from the trial court's summary judgment in favor of Clarence and Slate.
Galactic raises a number of arguments contending that it raised sufficient evidence to support the various fraud and negligence claims it asserted against Clarence and Slate. Our review of a summary judgment is de novo.
"In reviewing the disposition of a motion for summary judgment, `we utilize *437 the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).

I.

Did Clarence and Slate Owe a Duty to Galactic?
Before addressing the various issues raised by Galactic, we must first consider the basis on which the trial court entered its summary judgmentthat Clarence, a director, and Slate, an officer, owed no duty to Galactic. Our review of the law on this subject reveals that Alabama caselaw provides two differing theories pursuant to which an officer or director may be personally liable, or owe a duty, to third parties.

A. Officer and Director Liability for Personal Participation in a Tort.

The first line of cases provides that "`[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.'" Ex parte McInnis, 820 So.2d 795, 798-99 (Ala.2001)(quoting Sieber v. Campbell, 810 So.2d 641, 645 (Ala.2001)).[2] Our *438 review of those cases indicates that the courts, although not explicitly stating the basis for liability, have held officers and directors personally liable for their active participation in an intentional tort. In McInnis, supra, the corporate officers or directors were sued for allegedly tortious conduct in formulating, manufacturing, labeling, and distributing a product that allegedly caused a wrongful death; in Sieber, supra, the plaintiff's complaint against the corporate officers and directors alleged breach of contract, fraudulent assertion of a corporate existence, misrepresentation, suppression, and promissory estoppel. See also Bethel v. Thorn, 757 So.2d 1154 (Ala.1999) (alleging promissory fraud, fraudulent misrepresentation, and fraudulent suppression); Inter-Connect, Inc. v. Gross, 644 So.2d 867 (Ala.1994) (alleging conversion, trespass, conspiracy, and disclosure of trade secrets); Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774 (Ala.1986) (alleging fraud); Crigler v. Salac, 438 So.2d 1375 (Ala.1983) (alleging conversion, fraud, conspiracy, negligence of a warehouseman, and wantonness of a warehouseman in committing fraud and converting personal property); Alabama Music Co. v. Nelson, 282 Ala. 517, 213 So.2d 250 (1968) (alleging conversion); Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358 (1955) (alleging conversion); Tennessee Chem. Co. v. Cheatham, 217 Ala. 399, 116 So. 420 (1928) (alleging breach of contract and conversion).
This theory of officer or director liability has been applied in at least two cases in which the plaintiffs asserted claims of negligenceCrigler, supra, and Southeastern Construction Co. v. Robbins, 248 Ala. 367, 27 So.2d 705 (1946). However, in both of those cases a special fiduciary relationship existed between the plaintiffs and the corporate officer or director. The negligence claim asserted in Crigler, negligence of a warehouseman, arose out of the fiduciary relationship created under our bailment laws. Section 7-7-204, Ala.Code 1975, provides for a negligence cause of action against a warehouseman, which the defendant corporation in that case was, pursuant to § 7-7-102(1)(h), Ala.Code 1975. Similarly, in Southeastern Construction a fiduciary relationship was recognized to exist between the officers and directors of a dissolved corporation and its shareholders and creditors.

B. No Duty Owed by Officers and Directors to Creditors.

The second theory present in Alabama caselaw indicates that this state is one of a number of jurisdictions that generally do not provide for officer or director liability to creditors,[3] such as Galactic, for negligent *439 or ultra vires acts, on the basis that there is no duty owed to the creditor.[4] In Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc., 458 F.Supp. 310 (M.D.Ala. 1978), the United States District Court for the Middle District of Alabama stated:
"It appears to be the law in Alabama that an officer, director, or controlling stockholders of a corporation generally are not liable to corporate creditors for negligent or ultra vires actions which affect the ability of the corporation to pay its debts. See Tennessee Chemical Co. v. Cheatham, 217 Ala. 399, 116 So. 420 (1928)(`"Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is solvent or insolvent,"' quoting O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525 [(1895)]); Force v. Age-Herald Co., 136 Ala. 271, 33 So. 866 (1902); 19 Am.Jur.2d, Corporations § 1350 (1965).... The only ground upon which officers and directors can be liable to creditors is if they `fraudulently divert or destroy the corporate assets, which are subject to the payment of corporate debts.' Force, supra, 136 Ala. at 278, 33 So. at 868. An act constitutes a fraud on the rights of the creditors if done with the intent to hinder or delay the collection of the claims. Id. at 276, 33 So. 866."
458 F.Supp. at 312-13 (emphasis added; footnote omitted).

C. Application of These Two Theories.

In Tennessee Chemical, supra, our supreme court applied both of these theoriesliability for personal participation in an intentional tort and no duty to a creditor for negligenceseparately to two corporate officers or directors based upon their respective roles in the alleged wrongful conduct at issue. Accordingly, further discussion of that case is warranted.
Tennessee Chemical Company sued J.A. Cheatham and Jessie B. Black, along with other defendants, asserting that Cheatham and Black were the principal stockholders in the Farmers' Mercantile Company; Cheatham was also the managing head of the corporation, and Black was a member of its board of directors. Tennessee Chemical had entered into a contract with Farmers' Mercantile in which Farmers' Mercantile received fertilizer from Tennessee Chemical to be sold on a commission basis. Cheatham had signed the contract which provided that "`[i]f you are a corporation, the officer or officers signing this contract on behalf of the same shall be liable to us for carrying out all the conditions *440 hereof.'" 217 Ala. at 403, 116 So. at 423. All moneys and promissory notes received from the fertilizer sales were to be sent to Tennessee Chemical. Cheatham was alleged to have taken moneys and promissary notes received in exchange for fertilizer and to have converted them to Farmers' Mercantile's own use. Promissory notes that had not been paid at their maturity had also been provided to Tennessee Chemical by Farmers' Mercantile for fertilizer. Tennessee Chemical received a judgment against Farmers' Mercantile, which subsequently went bankrupt. Cheatham was also alleged to have used converted moneys to form a new corporation after Farmers' Mercantile went bankrupt; it was alleged that he placed a number of shares of the stock in the new corporation in his wife's name in an effort to hinder Tennessee Chemical's collection efforts. Tennessee Chemical sued Cheatham for his alleged wrongful conduct conversionand it sued Black for her active participation in the alleged conversion or for her negligence in permitting it to be done.
The trial court sustained a demurrer filed by the defendants; our supreme court reversed and remanded. As to the allegations against Cheatham, the supreme court determined that the trial court erred by sustaining his demurrer, stating:
"The bill, however, charges a conversion or tort on the part of the Farmers' Mercantile Company as to the cash sales of the fertilizer and the notes which should have been made payable to [Tennessee Chemical] and that J.A. Cheatham was managing head of said respondent corporation. It is a well-settled proposition that all who participate in a wrong or tort, whether principal or agent, are equally guilty and liable to the party injured. 3 Cook on Corporations (8th Ed.) p. 2724, § 682; Cooley on Torts (3d Ed.) p. 244; Emery & Co. v. Am. Refrigerating Co., 193 Iowa, 93, 184 N.W. 750, 20 A.L.R. 86 [(1921)], and note. ...
"....
"[Tennessee Chemical] therefore had the right to pursue both the Farmers' Mercantile Company and the said Cheatham notwithstanding the bankruptcy of the former, and could recover from all sources until its claim was fully satisfied, but no longer. Board of Coms. v. Hurley (C.C.A.) 169 F. 92 [(8th Cir. 1909)]."
217 Ala. at 402-03, 116 So. at 423.
However, the supreme court sustained the demurrer filed by Black, stating as follows:
"As to Jessie B. Black, the bill charges that she was a director in the Farmers' Mercantile Company and it was her duty to see that the contract had been complied with, and then charges in the alternative that she either actually participated in the wrongs on the part of Cheatham or she negligently, in disregard of her duty, permitted the wrong. Therefore, measuring the averment by its weakest link, the said Jesse B. Black merely failed to discharge her duty as a director. As a general rule a mere corporate creditor cannot hold an officer or agent of a corporation responsible for a mere neglect or ultra vires act as distinguished from a fraudulent transfer or misapplication of corporate assets from the payment of corporate debts. Force v. Age-Herald Co., 136 Ala. 271, 33 So. 866 [(1903)]. `Directors may not be liable to corporate creditors for negligence in the management of the affairs of the corporation.' Cook on Corporations, § 735. `Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is *441 solvent or insolvent.' O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525, 28 L.R.A. 707, 54 Am. St. Rep. 31 [(1895)]."
217 Ala. at 403, 116 So. at 423.

D. Conclusion.

We conclude that Tennessee Chemical, supra, is factually similar to the present case. Here, a default judgment has already been entered against Awwad, the corporate officer who personally committed the complained-of wrongs against Galactic. Clarence and Slate are not liable to Galactic for their alleged negligence in hiring and supervising Awwad because they owed no duty to Galactic. We will, however, review the claims asserted by Galactic involving intentional torts to determine whether Galactic presented substantial evidence to show personal participation in those alleged torts by Clarence and Slate.

II. Intentional-Tort Claims

Reviewing the evidence in a manner most favorable to Galactic, Hobson, supra, it appears that the sole person who committed any intentional tort against Galactic was Awwad, against whom a default judgment has been entered. The evidentiary materials submitted by Galactic make it apparent that it was Awwad's alleged misrepresentations concerning incoming moneys from other clients' contracts and owner contributions, at least in part,[5] that caused Galactic to continue to pay Matrix's payroll. Although Slate and Clarence made some payments to Galactic to ensure that Matrix's payroll would be paid by Galactic after they became aware of the financial problems caused by Awwad's misuse of the corporation's money, we conclude that there was not substantial evidence presented by Galactic to show that either Clarence or Slate personally participated in the fraud committed by Awwad.

III. Piercing the Corporate Veil

We will lastly address Galactic's argument that it presented substantial evidence to support a piercing of Matrix's corporate veil so as to attach personal liability to Clarence and Slate. This court has observed:
"Our supreme court has held that the factors to be considered when determining whether to pierce the corporate veil are:
"`"`Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state. Co-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37 (Ala.1988). Alorna Coat Corp. v. Behr, 408 So.2d 496 (Ala.1981). The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity. Messick v. Moring, 514 So.2d 892 (Ala.1987); Forester & Jerue, Inc. v. Daniels, 409 So.2d 830 (Ala.1982). The fact that a corporation is under-capitalized is not alone sufficient to establish personal liability. Co-Ex Plastics, Inc. v. AlaPak, supra; East End Memorial Association v. Egerman, 514 So.2d 38 (Ala. 1987). To pierce the corporate veil, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. Washburn v. Rabun, 487 So.2d 1361 (Ala.1986); Cohen *442 v. Williams, 294 Ala. 417, 318 So.2d 279 (1975).
"`"`....
"`"`... Where the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. See Ala.Code 1975, §§ 10-2A-90, 10-2A-58, 10-2A-57; Co-Ex Plastics, Inc. v. AlaPak, Inc., supra. Therefore, mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Messick v. Moring, supra; Washburn v. Rabun, supra.
"`"`The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. See, e.g., Forester & Jerue, Inc. v. Daniels, supra; Hamrick v. First National Bank of Stevenson, [518 So.2d 1242 (Ala.1987)]; Deupree v. Ruffino, 505 So.2d 1218 (Ala.1987); Messick v. Moring, supra; East End Memorial Association v. Egerman, supra.'"
"`Backus v. Watson, 619 So.2d 1342, 1345 (Ala.1993), quoting Simmons v. Clark Equipment Credit Corp., 554 So.2d 398, 400-01 (Ala.1989).'
"Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869, 870 (Ala.1994)."
Ramko, Inc. v. Lander, 707 So.2d 645, 646-47 (Ala.Civ.App.1997).
The main ground upon which Galactic sought to pierce Matrix's corporate veil was that corporate funds were used to pay for personal expenses. Galactic relied on check stubs and American Express statements as evidence indicating that corporate funds were used to pay personal expenses. However, Clarence and Slate both stated during their depositions that Awwad had control and use of the American Express card that had been issued in Slate's name and that Slate had no knowledge that the card had been issued. This evidence was not contradicted by Galactic. Other payments made by company check were shown to have been made solely for the benefit of Awwad, e.g., payments for Awwad's child-support obligation; it was undisputed that Awwad had control of Matrix's day-to-day operations, including check-writing authority. Therefore, we conclude that there was not substantial evidence to support piercing the corporate veil in order to hold Clarence and Slate personally liable for Awwad's misuse of Matrix's funds.
Accordingly, the trial court's judgment is due to be affirmed.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Judge, concurring in the result.
While I agree with part of the discussion of the law in Part I of the main opinion, I believe that Part I of that opinion draws a distinction between actions based on intentional torts and actions based on negligence that is not supportable and, in fact, is contrary to our jurisprudence. Because the application of what I believe is the *443 correct view of our law as it relates to officer and director participation in both intentional torts and negligence committed against third parties would not change the result reached by the main opinion, however, I concur in the result.
I begin by noting that our Supreme Court, in Ex parte McInnis, 820 So.2d 795 (Ala.2001), as quoted in the main opinion, states simply that "`[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.'" 820 So.2d at 798-99 (quoting Sieber v. Campbell, 810 So.2d 641, 645 (Ala.2001)) (emphasis added). There is no limitation of this principle to intentional torts. In Tennessee Chemical Co. v. Cheatham, 217 Ala. 399, 402-03, 116 So. 420, 423 (1928), our Supreme Court explained that liability to third parties may be found on the part of an officer or director who participates in "a wrong or tort," again, not limiting this principle to intentional torts.
"In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity. Candy H. v. Redemption Ranch, Inc., 563 F.Supp. 505, 513 (M.D.Ala.1983); Chandler v. Hunter, 340 So.2d 818, 822 (Ala.Civ.App.1976)."
Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775 (Ala.1986) (emphasis added).
Likewise, the secondary source quoted in note 2 of the main opinion states that an officer or director may be "personally liable for all torts" against third parties in which they personally participate. See 3A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 1135 (perm. ed. rev.vol.2002).
"An officer or a director of a corporation is not, merely as a result of his standing as such, personally liable for torts of corporate employees; to incur responsibility he must ordinarily be shown to have in some way participated in or directed the tortious act. The above general principle has been upheld or recognized by the courts in ... actions based on negligence of subordinate corporate employees resulting in the personal injury or death of third persons."
W.A. Harrington, Annotation, Personal Civil Liability of Officer or Director of Corporation for Negligence of Subordinate Corporate Employee Causing Injury or Death of Third Party, 90 A.L.R.3d 916, 918 (1979) (footnote omitted; emphasis added). See also Ellingson v. World Amusement Serv. Ass'n, 175 Minn. 563, 572, 222 N.W. 335, 339 (1928) (declining to apply "the universal rule" that "an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor," not because the case involved the tort of negligence, but because the officer had not personally participated in that negligence).[6]
*444 The main opinion attempts to distinguish two Alabama cases where officers or directors were held liable to third parties because of their participation in negligent conduct on the ground that the negligence in those cases arose out of a special fiduciary duty. I find this explanation of Crigler v. Salac, 438 So.2d 1375 (Ala.1983), and Southeastern Construction Co. v. Robbins, 248 Ala. 367, 27 So.2d 705 (1946), to be a distinction without a difference. The officers or directors in those cases were found liable for their negligence. Any act of negligence presupposes a duty, arising from some source, that is breached by the tortfeasor. I do not see how the source of the duty that was breached in those cases provides any basis for concluding that an officer's or a director's direct participation in negligently tortious conduct will not subject that officer or director to personal liability to the injured party. Indeed, in Crigler v. Salac, 438 So.2d 1375, 1380 (Ala. 1983), our Supreme Court appeared to clearly acknowledge the principle that an officer or a director of a corporation may be "liable for the negligent or wrongful acts of the corporation" where he or she has been a participant in the tortious conduct. (Emphasis added.)[7]
Potential for confusion in this area stems from the fact that, unlike ordinary employees of a corporation, officers and directors also have special duties running directly to the corporation, as discussed further below. The fact that such officers and directors have such other duties, which in and of themselves may be the basis for liability directly to their corporations, does not change the fact that they may be liable for their direct participation in negligent acts against third parties for which the corporation also may find itself liable, either vicariously or because it directed or ratified that conduct.
The special duties of officers and directors to their corporations, and their shareholders, include the fiduciary duty of care in managing the affairs of the corporation. A breach of that duty, either by intentional conduct or by negligence, can result in financial losses to the corporation that serve as the basis for direct liability to the corporation or, in appropriate cases, derivative liability claims by the shareholders. An ancillary result of the same tortious *445 conduct that causes such financial losses to the corporation may be the corporation's inability to fully pay its creditors. The corporation's inability to pay its bills, however, does not give rise to a cause of action by the creditors directly against the officers and directors of the corporation. This is so because the underlying duty that has been breached, as discussed in Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc., 458 F.Supp. 310 (M.D.Ala. 1978), and in note 4 of the main opinion, 880 So.2d at 439, is a duty owed by the officers and directors to the corporation, not to third parties such as creditors.
The main opinion cites Tennessee Chemical Co. as a case in which our Supreme Court found, in the words of the main opinion, "liability for personal participation in an intentional tort and no duty to a creditor for negligence." 880 So.2d at 439. The reason that no liability was found on the part of the defendant charged with negligence was not because the claim against that defendant was for negligence, but because the tort involved a breach by the defendant, a director of a corporation, of her duty of care to the corporation and its shareholders to reasonably manage the affairs of the corporation. As the Supreme Court explained:
"`Directors may not be liable to corporate creditors for negligence in the management of the affairs of the corporation.' Cook on Corporations, § 735. `Directors, agents and officers of a corporation are trustees for its stockholders, but not for its creditors, and this whether the corporation is solvent or insolvent.' O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525 [(1895)]."
Tennessee Chem. Co., 217 Ala. at 403, 116 So. at 423 (emphasis added).
Applying the aforesaid principles to the present case, I would hold that summary judgment was proper because there is not substantial evidence that either Clarence McDorman ("Clarence") or Thomas "Slate" McDorman ("Slate") directly participated in the tortious conductwhether negligent or intentionalof Zeyad Awwad ("Awwad"). Just because an employer hires a tortfeasor does not mean that the employer is a participant in that tortfeasor's subsequent tort.
Galactic also complains, however, of negligence in the hiring and supervision of Awwad. It is true that our Supreme Court has recognized the torts of negligent training and negligent supervisionsee, e.g., Big B, Inc. v. Cottingham, 634 So.2d 999, 1002-03 (citing Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098, 1100 (Ala.1983), and Thompson v. Havard, 285 Ala. 718, 723, 235 So.2d 853 (1970))as well as the tort of negligent hiringsee, e.g., CP & B Enters., Inc. v. Mellert, 762 So.2d 356, 362 (Ala.2000) (noting that the jury could have found that the defendant was "negligent in hiring, supervising and retaining" an employee); Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278 (Ala.2000) (reversing the dismissal of, among other things, a claim for "negligent hiring, training, and supervision"); and Floyd v. Macon County Commission, 707 So.2d 262 (Ala.Civ.App.1997) (citing Big B, Inc. v. Cottingham)).
The real problem for Galactic in attempting to hold Clarence liable in this regard (and, ultimately, Galactic's real problem in attempting to recover in this case), however, is that Clarence was not the party who hired Awwad. The corporation, The Matrix, Inc., hired Awwad. Matrix was the employer; any negligence by the "employer" in hiring and supervising Awwad legally is negligence on the part of the corporation. Galactic could hold Clarence responsible for the corporation's negligent hiring or supervision if the corporation *446 was the alter ego of Clarence, i.e., if the corporate veil could be pierced. Because there is not substantial evidence in the record in this case to justify the conclusion that the corporation was merely the alter ego of Clarence, I agree that summary judgment was appropriate.
NOTES
[1] Clarence's investigation included discussions with both the attorney who prosecuted Awwad and Awwad's criminal defense lawyer. Clarence testified during his deposition that both had provided a favorable recommendation for Awwad.
[2] This theory, described as the "general rule" in 3A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 1135 (perm. ed. rev.vol.2002), is further set out as follows:

"An individual is personally liable for all torts which that individual committed, notwithstanding the person may have acted as an agent or under directions of another. This rule applies to torts committed by those acting in their official capacities as officers or agents of a corporation. It is immaterial that the corporation may also be liable. Under the responsible corporate officer doctrine, if a corporate officer participates in the wrongful conduct, or knowingly approves the conduct, the officer, as well as the corporation, is liable for the penalties. The person injured may hold either liable, and generally the injured person may hold both as joint tortfeasors.
"Corporate officers are liable for their torts, although committed when acting officially, even though the acts were performed for the benefit of the corporation and without profit to the officer personally. Corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval. However, more than mere knowledge may be required in order to hold an officer liable. The plaintiff must show some form of participation by the officer in the tort, or at least show that the officer directed, controlled, approved, or ratified the decision which led to the plaintiff's injury. If an officer or director has constructive knowledge of fraudulent acts it may be enough to attach personal liability. Circumstantial evidence, such as the way a corporation transacts business, can be used to prove constructive knowledge and direct evidence may not be needed. A corporate officer or director may not seek shelter from liability in the defense that he or she was only following orders. Personal liability attaches, regardless of whether the breach was accomplished through malfeasance, misfeasance or nonfeasance.
"Personal liability for the torts of officers does not depend on the same grounds as `piercing the corporate veil,' that is inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization. The true basis of liability is the officer's violation of some duty owed to the third person which injures such third person."
(Footnotes omitted.)
[3] Galactic acknowledges in its brief to this court, citing the affidavit of Blan Marriott contained in the record on appeal, that it is a creditor of Matrix.
[4] See 3A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 1181 (perm. ed. rev.vol.2002):

"According to one view, creditors of corporations cannot, in general, maintain an action against directors for default in duty owed to the corporation, although the creditors may be injured as a result. In other words, some courts hold that mere creditors of an insolvent bank or other corporation cannot sue, even in equity, to hold the directors or other officers liable for losses due to mere negligence, unless so provided by statute, although a cause of action may exist in favor of the corporation, because there is no trust relation between the officers and creditors.
"According to this rule, the directors are agents or representatives of the entire body of shareholders, and the relationship between the corporation and the directors is that of principal and agent. The agency of course implies a trust, but the obligations imposed by the trust are solely to the corporation whose agents and trustees they are, and like all other agents they are accountable for their stewardship to their principal alone. Creditors of the corporation are utter strangers to the obligation of the directors to the corporation."
(Footnotes omitted.)
[5] Marriott admitted during his deposition that his decision to continue Galactic's payroll services for Matrix was based upon his own business judgment.
[6] The rule of officer and director liability for their direct participation in negligent acts committed on behalf of the corporation is merely a manifestation of the more general rule that:

"In the absence of immunity, an employee may generally be held personally liable to a third person for injuries tortiously caused by the employee, regardless of whether the employer may also be liable. Although a master and servant may each and both be liable for a servant's tort committed in the course of employment, an employee who tortiously causes injury to a third person may be held personally liable to that person regardless of whether he or she committed the tort while acting within the scope of employment, because the employee's liability is based on personal wrongdoing independent of the employment relationship."
27 Am.Jur.2d Employment Relationship § 488 (1996) (footnote omitted). See, e.g., Sanford v. Kobey Bros. Constr. Corp., 689 P.2d 724 (Colo. Ct.App.1984) (neither the doctrine of respondeat superior nor the fiction of corporate existence bars the imposition of individual liability for individual acts of negligence, even though the individual is acting in a representative capacity).
This general rule is also the law in Alabama. "[W]henever the master, whether a corporation or an individual, is guilty of a tort through the misfeasance or wilfully wrongful conduct of a servant, the servant is for the same conduct personally guilty and liable." Alabama Great Southern R. Co. v. Ensley Transfer & Supply Co., 211 Ala. 298, 301, 100 So. 342, 345 (1924) (emphasis added), citing Wright v. McCord, 205 Ala. 122, 88 So. 150 (1920). See also Mi-Lady Cleaners v. McDaniel, 235 Ala. 469, 472, 179 So. 908, 910 (1938) (acknowledging the principle that "the servant not being liable for his negligence or wrongful conduct, ... the master was not liable" (emphasis added)); Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 453, 13 So.2d 660, 662 (1943) ("if the servant enters upon the service, and negligently performs it, both he and his master would be liable" (emphasis added)); Sanders v. Roberts, 563 So.2d 1022 (Ala.1990); Downes v. Norrell, 261 Ala. 430, 74 So.2d 593 (1954).
[7] I would presume that corporate officer and director participation in negligent acts committed by other corporate employees occurs less frequently than does their participation in fraudulent and other intentional conduct, thus explaining the lesser number of reported direct-participation cases involving actions based on negligence.